[Cite as *In re S.B.*, 2016-Ohio-7732.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF: S.B. | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| ALLEGED DELINQUENT CHILD | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 16CA27 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Juvenile Division, Case No.
                                 2016DEL45



JUDGMENT:                        Affirmed




DATE OF JUDGMENT:                November 9, 2016




APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

DANIEL M. ROGERS                        DAVID M. WATSON
38 South Park Street                    3 North Main Street
Mansfield, OH  44902                    Suite 702
                                        Mansfield, OH  44902

*Farmer, P.J.*

{¶1}   On January 15, 2016, appellee, S.B., a juvenile, was alleged to be delinquent by virtue of committing one count of rape in violation of R.C. 2907.02 with a serious youthful offender specification pursuant to R.C. 2152.11.  On March 9, 2016, the Richland County Grand Jury indicted appellee for the specification.

{¶2}   On April 1, 2016, appellee filed a motion to suppress her statements made to police, claiming she did not understand or voluntarily waive her rights.  Hearings were held on April 6, and May 10, 2016.  By judgment entry filed May 16, 2016, the trial court granted the motion, finding appellant, the state of Ohio, failed to meet its burden that appellee understood and knowingly waived her rights.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶4}   "THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S 'MOTION TO SUPPRESS JUVENILE'S STATEMENT', AS APPELLEE WAS NOT SUBJECTED TO CUSTODIAL INTERROGATION AND MADE THE STATEMENTS VOLUNTARILY."

I

{¶5}   Appellant claims the trial court erred in granting appellee's motion to suppress under the totality of the circumstances, as appellee was not in custody and her statements were made voluntarily.  We disagree.

{¶6}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.  First, an appellant may challenge the trial court's findings of fact.

In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶7} In its judgment entry filed May 16, 2016, the trial court granted appellee's motion to suppress, finding she was not in custody and therefore Miranda warnings were not necessary, even though Detective David Scheurer read the "Miranda Card" (State's Exhibit 1) to appellee:

5. The Court finds based upon the totality of the circumstances that the Juvenile did not understand her Miranda rights at the time of her questioning.

6. The Court finds there is no credible evidence on the electronic recording to indicate the Juvenile understood her right to an attorney based upon the perfunctory manner in which the Miranda rights were presented to her.

7. The Court further finds that the detective misled the Juvenile about what it was and why she was signing a waiver of rights.

8. The Court finds the Juvenile did not knowingly and intelligently waive her rights based upon a totality of the circumstances.

{¶8} Appellee signed the Miranda Card on the back which states, "I have read on this card the statement of my rights and understand what my rights are. I do not wish to remain silent. I do not want an attorney present."

{¶9} Detective Scheurer admitted he told appellee to sign the card to prove "that I read it to her." T. at 21. He testified appellee was fifteen years old and in his opinion, she understood the conversation they were having, why she was being questioned, and the words he was using, and she appeared normal and did not appear to have diminished capacity. T. at 13-15, 18. He stated the interview lasted between forty-five minutes to one hour. T. at 15. Appellee never requested her mother or counsel. T. at 18-19.

{¶10} Marlo Brown, a school psychologist with Townsend Community School, administered two General Intelligence Tests and an Academic Test to appellee and testified appellee had a composite quotient of 65 and based on her age, she would be in the lowest one per cent of same aged peers.  T. at 55-56, 58, 59-60, 65, 75; Defendant's Exhibit A.  Ninety-nine percent "of all other students or kids in that particular group would be higher than her."  T. at 60.  However, it was acknowledged that appellee functioned sufficiently in a "brick and mortar" school when in elementary school.  T. at 79.

{¶11} The trial court had the benefit of viewing Detective Scheurer's entire interview with appellee (State's Exhibit 2).  We have also reviewed the entire interview. At the outset, Detective Scheurer knew appellee was the only suspect of the criminal act.  Appellee was alone in the room with the door closed, and her mother was outside the room.  Although Detective Scheurer read the Miranda Card, he did not tell appellee that her signature was a waiver of those rights.  Immediately after making statements, appellee was detained, cuffed, and placed into custody.  The length of the interview was in excess of one hour.

{¶12} Appellee was in tears over one-third of the interview.  She chewed her fingers, covered her head with a hood, and looked away from the detective.  When confronted with the fact that her first stories were not the truth and the detective knew she did it, appellee told Detective Scheurer at least three times just to take her to jail. On the other hand, Detective Scheurer had a calm and fatherly approach to appellee. He kept his voice low and was persuasive that appellee could say it was just an accident.

{¶13} In *State v. Barker*, ___ Ohio St.3d ___, 2016-Ohio-2708, ¶ 39, 41-42, the Supreme Court of Ohio stated the following:

The totality-of-the-circumstances test takes on even greater importance when applied to a juvenile. A 14- or 15-year-old "cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions." *Gallegos v. Colorado,* 370 U.S. 49, 53–54, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), citing *Haley,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224. The United States Supreme Court has observed:

[A] 14–year–old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights.

*Id.* at 54, 82 S.Ct. 1209.

" 'It is now commonly recognized that courts should take "special care" in scrutinizing a purported confession or waiver by a child.' " *In re C.S.,* 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 106, quoting *In re Manuel R.,* 207 Conn. 725, 737–738, 543 A.2d 719 (1988), citing *Haley,* 332 U.S. at 599, 68 S.Ct. 302, 92 L.Ed. 224. When an admission is obtained from a juvenile without counsel, "the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *In re Gault,* 387 U.S. at 55, 87 S.Ct. 1428, 18 L.Ed.2d 527.

The totality of the circumstances from which a court must determine the voluntariness of a juvenile's statement includes not only the details of the interrogation but also the juvenile's unique characteristics. That analysis here would necessarily include consideration of factors such as Barker's age, the late-night time of the interrogation, the absence of a parent or guardian, Barker's "borderline intelligence" and third-grade reading level, Barker's statement that he was not familiar with *Miranda* rights other than having heard of them from television, and Barker's apparent confusion about what an attorney was. Application of the statutory presumption would remove all consideration of the juvenile's unique characteristics from the due-process analysis unless the juvenile introduced evidence to disprove voluntariness when the interrogation was electronically recorded. But there is no rational relationship between the

existence of an electronic recording and the voluntariness of a suspect's statement. This is especially true where, as with R.C. 2933.81(B), the statute requires only that the *statement* sought to be admitted, not the entire interrogation, be recorded.

{¶14} We are disinclined to embrace the trial court's conclusion that appellee was not in custody. We further find there is no affirmative waiver of appellee's constitutional rights. Appellee's signature on State's Exhibit 1 was at the detective's direction and was a mere acknowledgment that he had read her the rights card.

{¶15} Appellee's I.Q., demeanor, and childlike actions during the interview lead us to conclude that the admissions were at the suggestion of the detective and not voluntary.

{¶16} Upon review, we find the trial court did not err in granting the motion to suppress.

{¶17} The sole assignment of error is denied.

{¶18}  The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, P.J.

Gwin, J. and

Delaney, J. concur.

SGF/sg 1017